# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

DEERE & COMPANY, )
)
       Plaintiff, )
vs. ) NO. CIV-13-0511-HE
)
LARRY CABELKA, ET AL., )
)
       Defendants. )

## ORDER

The parties appeared for non-jury trial on September 15, 2014. Plaintiff Deere & Co. ("Deere") moved for dismissal of its claims against Defendants Golden Triangle Farms, LLC ("GTF") and Larry Cabelka, after the tentative settlement between those parties broke down. Deere sought dismissal without prejudice to the refiling of the claims. In light of the failed tentative settlement, the court was willing to allow a brief continuance so that plaintiff would have time to assemble its witnesses, but was unwilling to dismiss plaintiff's claims without prejudice, given the advanced stage of this case and the potential for a second case and trial arising out of the same dispute. Plaintiff elected to dismiss its claims with prejudice rather than to pursue further relief here. Accordingly, the court dismissed the claims of plaintiff Deere with prejudice to their refiling.

The case proceeded to trial on the cross-claims asserted by the defendants against each other. Defendants Stanley and Steve McCuiston (collectively, "the McCuistons") asserted a cross-claim for breach of warranty of title against GTF, and a cross-claim for constructive fraud/negligent misrepresentation against Cabelka, alleging that Cabelka/GTF sold a JD9660

1

combine to the McCuistons knowing, but not disclosing, that the equipment was subject to a security interest held by Deere. GTF asserted a cross-claim against the McCuistons[1] for conversion/breach of contract, alleging that the McCuistons had taken possession of the combine, as well as a JD635F header, but failed to pay for them.[2] The parties submitted testimony and other evidence in support of their respective claims. This order states the findings of the court and its conclusions of law as to the parties' claims.

## Findings of Fact

Much of the evidence was of oral agreements between the various parties, lacking the sorts of documentation often found in commercial transactions of the size and type involved here. The parties' accounts were, in certain respects, diametrically opposed to each other and the court's determination necessarily hinges on credibility determinations of the testifying witnesses. In general, the court found the testimony of the McCuistons to be more credible and believable than the account offered by Cabelka and GTF. Based on the evidence at trial and the various stipulations included in the pretrial report [Doc. #141], the court finds the following facts by a preponderance of the evidence:

---

[1] *Originally, GTF asserted these cross-claims against Philip McCuiston as well. At trial, however, the parties stipulated that he should be dismissed from the case altogether, as he was not involved in any of the events that gave rise to this dispute.*

[2] *The McCuistons contend that GTF lacks the capacity to assert any claims against them because its status as a limited liability company has been forfeited in Texas, its state of organization, due to nonpayment of taxes. Resolution of the issue is complicated by the fact that Oklahoma apparently views the LLC as being in active status, which is arguably determinative here. See generally, FED. R. CIV. P. 17(b)(3). However, as the court concludes GTF's claims against the McCuistons fail on the merits, it is unnecessary to address the issue further.*

1. In May of 2011, the McCuistons purchased a JD9660 combine from GTF. Stanley McCuiston was nominally negotiating on behalf of his son, Steve McCuiston, but the two McCuistons operated their farming operation as a joint undertaking in various respects. The negotiations were primarily with Larry Cabelka, the majority owner and de facto manager of GTF. The result of the negotiations was an agreement by the McCuistons to purchase the JD9660 combine (serial #: H09660S707060) for the amount of $95,000.

2. This amount was paid by the McCuistons through (1) a down payment of $20,000, made through two separate checks, dated May 14, 2011 and June 10, 2011; (2) a further payment of $35,000 on May 25, 2012; and (3) agreed application of certain amounts owed by GTF to the McCuistons. The latter amounts were the result of custom cutting operations jointly conducted by the parties in prior years, for which the McCuistons had not been fully paid.

3. The JD9660 combine in question was not owned by GTF at the time of delivery, but rather was owned by Donald Bergkamp, a Kansas resident. More importantly for present purposes, the combine was subject to a prior, valid security interest in favor of Deere. Bergkamp defaulted on his obligations under the security agreement, resulting in Deere's efforts to realize on its collateral and, ultimately, the filing of this lawsuit.

4. Cabelka and GTF knew of, but did not disclose to the McCuistons, the existence of the security interest in favor of Deere. The McCuistons reasonably understood that they were purchasing the combine from GTF and had no knowledge of the outstanding security interest.

5. In this case, Deere asserted claims for replevin and conversion against the McCuistons, arising from their possession and subsequent resale of the subject combine. The McCuistons had substantial exposure on the claims, the amount of which exceeded $100,000.

6. The McCuistons settled Deere's claims against them for the sum of $65,000, pursuant to a written settlement agreement. As of the date of trial, the McCuistons were obligated to pay the $65,000, but had not yet done so. Based on the nature of the claims and the McCuistons' potential exposure, the settlement was reasonable.

7. In the fall of 2010, the McCuistons provided custom cutting services for GTF, for which GTF owed the McCuistons approximately $30,000. In lieu of cash or other payment for those services, GTF transferred to the McCuistons the JD635 header (serial #: H00635D730453) in the spring of 2011.

## Conclusions of Law

Based on the foregoing facts, the court reaches the following conclusions of law:

a. Implied in every contract for the sale of goods is a warranty, made by the seller, that the goods "shall be delivered free from any security interest," unless the buyer has actual knowledge of the security interest. 12 O.S. § 2-312. The buyer bears the burden to prove that (1) a warranty exists, (2) the seller breached the warranty, and (3) the buyer suffered damages that were proximately caused by the seller's breach. *See* Am. Fertilizer Specialists, Inc. v. Wood, 635 P.2d 592, 595 (Okla.1981) (citing U.C.C. § 2-314 cmt. 13); *see also* Alexander v. Smith & Nephew, P.L.C., 98 F. Supp. 2d 1310, 1322 (N.D. Okla. 2000). If the buyer

succeeds, he is entitled to proximate, consequential, and incidental damages, as well as attorney's fees. 12A O.S. § 2-714(b)-(c) (damages); 12 O.S. § 936 (attorney's fees).

    b. The sale of the JD9660 combine from GTF to the McCuistons included an implied warranty of title. GTF breached this warranty by failing to either satisfy or disclose Deere's security interest upon delivery. As a result of GTF's breach, the McCuistons became obligated to Deere for the amount of $65,000 in order to settle claims asserted against them for replevin and conversion of the combine. As such, GTF is liable for the $65,000 settlement, as well as the McCuistons' attorney's fees reasonably incurred in the pursuit of the breach of warranty claim.

    c. "[C]onstructive fraud is a breach of a legal or equitable duty to the detriment of another, which does not necessarily involve any moral guilt, intent to deceive, or actual dishonesty of purpose." Croslin v. Enerlex, Inc., 308 P.3d 1041, 1045-46 (Okla. 2013) (citing 15 O.S. § 59). An equitable duty may arise from "the situation of the parties, the nature of the subject matter of the contract, or the particular circumstances surrounding the transaction." *Id.* at 1047.

    d. Cabelka was under at least an equitable duty to disclose the existence of the security interest to the McCuistons, based on his past relationship with them in conducting joint custom cutting operations and his role in negotiating or arranging multiple equipment sales and purchases with them over the years. Further, Cabelka's relationship to GTF was such that, in addition to being its principal owner, he was, or was tantamount to being, the

5

alter ego of GTF. He made the essential decisions of GTF. GTF's knowledge of the facts and circumstances pertinent to the claims involved here was based on the knowledge of Cabelka. Cabelka is therefore personally liable to the McCuistons for the damages they suffered as a result of his failure to disclose the existence of the security agreement.

e. "Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." Steenbergen v. First Fed. Sav. & Loan of Chickasha, 753 P.2d 1330, 1332 (Okla. 1987). To succeed on a conversion claim, one must show that (1) he had a right in the property (2) the defendant wrongfully interfered with that right, and (3) he suffered damages. Slover v. Equitable Variable Life Ins. Co., 443 F. Supp. 2d 1272, 1279 (N.D. Okla. 2006).

f. The McCuistons' possession of the referenced combine and header did not interfere with any rights of GTF or Cabelka in them. The combine and header were sold to the McCuistons at the times indicated above and Cabelka/GTF retained no possessory rights in them.

g. To prevail on a breach of contract claim in Oklahoma, one must prove that (1) the parties formed a valid contract (2) the defendant breached its contractual obligations, and (3) defendant's breach resulted in damages. Digital Design Grp., Inc. V. Info. Builders, Inc., 24 P.3d 834, 843 (Okla. 2001).

h. The McCuiston's obligations under the contracts for the combine and the header have been discharged by full payment. Giving effect to the payments and the agreed application of prior credits, the combine was fully paid for on May 25, 2012. The header was

fully paid for in the spring of 2011 by application of prior credits owed the McCuistons. The McCuistons did not breach either contract.

### Rulings

Based on the above findings and conclusions, judgment will be entered in favor of Stanley and Steve McCuiston on their claims against defendants GTF and Cabelka, in the amount of $65,000. The liability of GTF is based on the breach of warranty claim; the liability of Cabelka personally is based on the constructive fraud claim. The liability of GTF and Cabelka is joint and several as to the $65,000, contingent upon the McCuiston's first paying Deere pursuant to their settlement agreement.

The McCuistons are also entitled to recover from GTF their reasonable attorneys fees incurred in connection with the breach of warranty claim. The parties are directed to confer and attempt to reach an agreed resolution as to the amount of the attorneys fees. If an agreement cannot be reached, the McCuistons shall file their motion for the same within 14 days of entry of this order.

Judgment will be entered in favor of the McCuistons, and against GTF/Cabelka, on the claims of GTF and Cabelka. All claims against defendant Philip McCuiston are dismissed with prejudice, as are the claims asserted by Deere against GTF and Cabelka.

**IT IS SO ORDERED**.

Dated this 23rd day of September, 2014.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE